## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SHELLONDA ANDERSON,<br><br>*Plaintiff*,<br><br>v.<br><br>THE MOUNT SINAI HOSPITAL, MOUNT SINAI HEALTH SYSTEM, INC., and MOUNT SINAI HOSPITALS GROUP, INC.,<br><br>*Defendants*. | Civil Action No. 24-696<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Shellonda Anderson, through her attorneys, Eisenberg & Baum, LLP, states her Complaint against Defendants Mount Sinai Hospital, Mount Sinai Health System, Inc., and Mount Sinai Hospitals Group, Inc. (collectively, "Mount Sinai"):

## INTRODUCTION

1.      For expecting parents, the birth of a child is one of life's most memorable moments. Tragically, however, Shellonda Anderson suffered a stillbirth at Mount Sinai, and throughout this painful ordeal, Mount Sinai failed to provide interpreters to accommodate her deafness at specific critical junctures of her hospitalization and allow her to fully and completely understand her medical care.

2.      Because of her deafness, Anderson primarily communicates in American Sign Language ("ASL") and requires an ASL interpreter to receive equal treatment and equally effective communication.

3.      On November 20, 2020,  Anderson was admitted to Mount Sinai and went through a six-hour labor, which ultimately resulted in a stillbirth.

4.      Anderson repeatedly requested interpreters, but Mount Sinai did not provide them for the hours she arrived to the time her baby was pronounced dead at birth.

1

5.      Anderson is entitled to equal access to services offered by Mount Sinai as are enjoyed by non-disabled persons.

6.      Under federal regulations, which authoritatively construe the associated statutes, a covered is required to provide "appropriate auxiliary aids" to a deaf patient "where necessary to ensure effective communication." *See, e.g.*, 28 C.F.R. § 35.160(b)(1), *adopted by* 45 C.F.R. § 92.102(a) (regulation implementing the Affordable Care Act).

7.      Mount Sinai advertises it provides "Qualified Sign Language interpreters for Deaf individuals,"      and      so      there      would      be      no      undue      hardship. https://www.mountsinai.org/about/language-accessibility.

8.      Mount Sinai discriminated against Anderson by refusing to provide the ASL services she required to fully understand and equally participate in her health care.

9.      Mount Sinai's failure to provide Anderson with ASL interpreters prevented her from enjoying the same services that a hearing person would.

10.      Mount Sinai's discrimination against Anderson, and her resulting lack of understanding, caused her to suffer anger, humiliation, frustration, and emotional distress. Indeed, civil-rights violations are inherently distressing because they inflict a profound personal humiliation and reinvoke a history of exclusion.

11.      Anderson brings this action seeking nominal, compensatory, declaratory, injunctive, and equitable relief; and attorney's fees and costs to redress Defendants' unlawful discrimination against her on the basis of his disability in violation of Section 1557 of the Patient Protection and Affordable Care Act ("ACA"),

**PARTIES**

12.      Plaintiff Shellonda Anderson is a resident of New York, who is substantially limited

in the major life activities of hearing and speaking. Thus, she has a "disability" within the meaning of city, state, and federal civil rights laws.

13.     Defendant Mount Sinai Health System, Inc., is the sole parent/member of Mount Sinai Hospitals Group, Inc., and both entities are not-for-profit corporations.

14.     Defendant Mount Sinai Hospitals Group, Inc., is the sole parent/member of The Mount Sinai Hospital.

15.     Defendant Mount Sinai Hospital is a not-for-profit corporation, and its mailing address is One Gustave L. Levy Place, New York, New York 10029.

16.     Upon information and belief, Mount Sinai is a place of public accommodation and a recipient of federal financial assistance.

17.     Medicare and Medicaid reimburse Mount Sinai for care that it provides to Medicare and Medicaid beneficiaries.

18.     Mount Sinai agreed to receive federal funds in exchange for promising to refrain from discriminating against qualified individuals with disabilities, among other reasons.

19.     The federal government has substantially performed its obligations under this contractual arrangement with Mount Sinai, including reimbursements for Medicare and Medicaid, and was willing and able to perform its remaining obligations.

## JURISDICTION AND VENUE

20.     This Court has subject matter jurisdiction for the federal-law claim under 28 U.S.C. §§ 1331 and 1343 because this action arises under the laws of the United States. This Court also has supplemental jurisdiction for the city-law and state-law claims under 28 U.S.C. § 1367 because those claims are substantially related to the federal-law claims.

21.     Venue is proper in this District under 28 U.S.C. § 1391(b) because, among other

things, Defendants reside in this District and the acts and omissions giving rise to this Complaint occurred in this District.

## STATEMENT OF FACTS

22.    Shellonda Anderson is a profoundly deaf individual who communicates primarily in American Sign Language or "ASL."

23.    Some background on deaf culture is necessary to understand the balance of this case. English and ASL are different languages, and so Anderson is unable to effectively communicate by reading lips. Lip reading is the ability to understand the speech of another by watching the speaker's lips. It is no substitute for direct communication through a qualified sign language interpreter because many mouth movements appear identical on the lips. What is more, even if a primary ASL user were able to determine the sounds appearing on a speaker's lips, he or she would still not necessarily understand the English language because English and ASL are distinct languages with different grammatical structures. As another example, ASL and French Sign Language are also distinct languages.

24.    Due to the inherent limitations of lipreading, she cannot make out most of the aural information that is presented during important healthcare communications, such as group and individual therapy, lectures, and consultations. It is not possible for people who lipread to consistently understand everything that is said by lipreading alone. Common difficulties associated with lipreading include but are not limited to: normal speech is too fast to lipread easily, many sounds are not seen on the lips, many speech patterns look similar on the lips, and many sounds look alike, even though they are different.

25.    There are many factors outside of Anderson's control that reduce the effectiveness of lipreading because many people, including that healthcare professionals and other patients may

not speak clearly, have facial hair or accents that interferes with lipreading, cover parts of their mouth when speaking, and not look directly at the person who is lipreading.

26. Language is the cornerstone of the patient-physician relationship. Indeed, "it is primarily through language that the physician works to establish rapport and trust. Good physician-patient communication is fundamental to good health care." E. McEwen & H. Anton-Culver, Journal of Family Practice, Vol. 26, No. 3:289–291, 291 (1988), https://bit.ly/3IlbgUh.

27. On November 20, 2020, Anderson checked into Mount Sinai and went into labor for six hours. Tragically, her delivery resulted in a stillbirth. She was discharged two days later.

28. Despite Anderson's repeated requests for sign language interpretation, Mount Sinai failed to provide qualified interpreters from her arrival at Mount Sinai to the birth of her deceased child on: November 20, 2020; after 6:00 pm on November 20, 2020; for over 23 hours on November 21, 2020, and for some critical medical interactions on November 22, 2020.

29. Under the New York State Hospital Patients' Bill of Rights, Anderson was entitled to receive "all the information that [she] need[ed] to give informed consent for any proposed procedure or treatment," including "the possible risks and benefits of the procedure or treatment." New York State Hospital Patients' Bill of Rights, *available at* https://on.ny.gov/2mqJ9vn (last visited January 9, 2024).

30. Upon information and belief, Mount Sinai is accredited by the Joint Commission.

31. Upon information and belief, Mount Sinai follows the recommendations and regulations of the Joint Commission.

32. Upon information and belief, Mount Sinai follows the recommendations in the Joint Commission's Advancing Effective Communication, Cultural Competence, and Patient- and Family-Centered Care: A Roadmap for Hospitals.

33.     Mount Sinai has a responsibility to develop a system to provide language services to address the communication needs of patients and residents whose preferred language is not English, including patients who communicate through sign language.

34.     Mount Sinai has a responsibility to identify a patient's preferred language for discussing health care.

35.     If necessary to determine a patient's preferred language, Mount Sinai arranges for language services to help identify the patient's individual's preferred language, and once the preferred language is identified, Mount Sinai notes the patient's individual's preferred language for health care discussions in the patient's medical record and communicates this information to staff.

36.     Deaf patients are entitled to communicate through American Sign Language interpreters.

37.     Anderson requires an ASL interpreter to receive equal participation and equally effective communication, especially for complex interactions

38.     Anderson was deprived of the full and equal enjoyment of Mount Sinai's benefits and services. Specifically, she did not receive a "like experience" as compared to non-disabled patients who receive full benefits and services from Mount Sinai by communicating in their primary and preferred language.

39.     Accordingly, Anderson, as a person seeking medical treatment, had an expectation interest in the ability to fully participate in her own medical care, healthcare decisions, and all of the benefits and services provided by Mount Sinai, including but not limited to vital discussions with doctors, nurses, and other members of the medical staff. Anderson also had an expectation interest in being able to communicate with and be informed about her care by Mount Sinai in her

primary or preferred language or through some other equally effective form of communication because that is what federal antidiscrimination laws require.

40.     In failing to provide such equal treatment, Mount Sinai intentionally discriminated against Anderson and acted with deliberate indifference to her federally protected rights because Mount Sinai's staff knew that it was not effectively communicating with Anderson with the methods they were using. Likewise, Mount Sinai's staff knew that Anderson would not be receiving equal participation on this same basis.

41.     The actions of Mount Sinai's staff compromised Anderson's ability to receive equal participation when she did not communicate in her preferred and primary language, affecting her ability to receive communications as effective as those received by non-disabled patients.

42.     Mount Sinai's discrimination against Anderson not only caused emotional distress but violated her civil rights.

43.     Anderson seeks any and all remedies available under contract law, including expectation-interest damages and specific performance. Mount Sinai must honor her right to understand her treatment and medical history by providing ASL interpreters to explain her prior history and procedures. A recitation of her care, with the ability to ask questions, would put Anderson in as good a position as if the contract had been performed.

44.     Anderson has no adequate remedy to fully understand all her medical communications at Mount Sinai. Here, when patients like Anderson arrive at a hospital for treatment, they expect that they will be able to communicate with their healthcare providers about their care.

45.     Anderson should receive expectation-interest damages to give her the benefit of her bargain by awarding her a sum of money that will, to the extent possible, put her in as good a

position as he would have been in had the contract been performed.

46.     Anderson had a reasonable expectation in the ability to fully participate in her own medical care, and Mount Sinai denied Anderson this expectation interest by denying her the invaluable opportunity to be informed about her care and participate in healthcare decisions.

47.     Mount Sinai was unjustly enriched through its failure to pay for interpreters and otherwise saved those costs throughout Anderson's stay.

48.     Based on Anderson's experience, it is evident that Mount Sinai has failed to implement proper policies, procedures, trainings, and practices respecting the civil rights and communication needs of deaf individuals.

49.     Mount Sinai knew or should have known of its obligations as a health care provider under city, state, and federal antidiscrimination laws to develop policies to promote compliance with these statutes and to provide reasonable accommodations, including the provision of ASL interpreters to ensure equal communication, participation, and treatment of deaf individuals.

50.     Mount Sinai knew or should have known that its actions and inactions created an unreasonable risk of causing Anderson greater levels of emotional distress than a hearing person would be expected to experience.

51.     Mount Sinai's actions and inactions compromised Anderson's ability to receive equal participation when she did not communicate in her preferred and primary language, affecting her ability to receive communications as effective as those received by non-disabled patients.

52.     As a result of Mount Sinai's failure to accommodate Anderson, she received services that were objectively substandard and that were inferior to those provided to patients who are hearing.

53.     In doing so, Mount Sinai intentionally discriminated against Anderson and acted

8

with deliberate indifference to her civil rights.

54. Mount Sinai intentionally and deliberately discriminated against Anderson by denying her the opportunity for the full and equal enjoyment of its programs, services and activities.

55. Mount Sinai intentionally and deliberately discriminated against Anderson by denying her the opportunity to participate in or benefit from its programs, services and activities.

56. Mount Sinai intentionally and deliberately discriminated against Anderson by offering or affording her services that are not equal to those services afforded to other individuals without hearing impairments.

57. Mount Sinai intentionally and deliberately discriminated against Anderson by failing to make reasonable modifications in policies, practices, or procedures.

58. Mount Sinai intentionally and deliberately discriminated against Anderson by failing to establish a procedure for effective communication with Anderson for the purpose of providing health care.

59. Anderson still intends to visit Mount Sinai in the future given its proximity to her residence and the fact that she has previously visited Mount Sinai, which maintains her medical records and history. However, she is deterred from doing so by Mount Sinai's discrimination against her on the basis of her disability.

## CAUSES OF ACTION

### CLAIM I:    Violations of the Patient Protection and Affordable Care Act

60. Anderson incorporates by reference all preceding paragraphs and realleges them in support of this claim.

61. At all times relevant to this action, Section 1557 of the Patient Protection and

Affordable Care Act has been in full force and effect and has applied to Defendants' conduct.

62.     At all times relevant to this action, Anderson has had substantial limitations to the major life activities of hearing and speaking and has been an individual with a disability within the meaning of Section 1557 of the Patient Protection and Affordable Care Act, 42 U.S.C. § 18116.

63.     At all times relevant to this action, Defendants received federal financial assistance, including Medicare and Medicaid reimbursements, and have been principally engaged in the business of providing health care. Thus, Defendants are a health program or activity receiving federal financial assistance under 42 U.S.C. § 18116(a).

64.     Under Section 1557 of the Patient Protection and Affordable Care Act, "an individual shall not, on the ground prohibited under . . . section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794), be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance." 42 U.S.C. § 18116.

65.     At all times relevant to this action, Anderson's primary language for communication has been American Sign Language, and he "has a limited ability to read, write, speak, or understand English." 45 C.F.R. § 92.4. He has thus been an individual with limited English proficiency within the meaning of Section 1557 of the Patient Protection and Affordable Care Act.

66.     Under the Affordable Care Act, federal regulations adopt "the standards found at 28 CFR 35.160 through 35.164," which come from Title II of the Americans with Disabilities Act. 45 C.F.R. § 92.102(a).

67.     Under the Affordable Care Act, federal regulations provide that a "[covered] entity shall furnish appropriate auxiliary aids and services where necessary to afford individuals with

disabilities, including applicants, participants, companions, and members of the public, an equal opportunity to participate in, and enjoy the benefits of, a service, program, or activity of a [covered] entity. . . . In determining what types of auxiliary aids and services are necessary, a [covered] entity shall give primary consideration to the requests of individuals with disabilities. In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability." 28 C.F.R. § 35.160(b), *adopted by* 45 C.F.R. § 92.102(a). This regulation authoritatively construes the Affordable Care Act and was violated by Defendants.

68.     Under the Affordable Care Act, federal regulations provide that a covered entity "shall take reasonable steps to ensure meaningful access to such programs or activities by limited English proficient individuals," 45 C.F.R. § 92.101(a), and that where an individual "requires the provision of language assistance services, such services must be provided free of charge, be accurate and timely, and protect the privacy and independence of the individual with limited English proficiency. Language assistance services may include: (i) Oral language assistance, including interpretation in non-English languages provided in-person or remotely by a qualified interpreter for an individual with limited English proficiency, and the use of qualified bilingual or multilingual staff to communicate directly with individuals with limited English proficiency; and (ii) Written translation, performed by a qualified translator, of written content in paper or electronic form into languages other than English." 45 C.F.R. § 92.101(b)(2)(i)–(iv). This regulation authoritatively construes the Affordable Care Act and was violated by Defendants.

69.     As set forth above, Defendants discriminated against Anderson on the basis of her disability in violation of the ACA and its implementing regulations.

70.     The ACA, by incorporating the enforcement mechanism of the Rehabilitation Act,

extends a cause of action to Plaintiff—that is, "any person aggrieved" by discrimination in violation of the Rehabilitation Act.  42 U.S.C. § 18116(a).

71.     The Rehabilitation Act—and by extension, the ACA—explicitly authorize the remedies available under 42 U.S.C. § 1981a. Specifically, 29 U.S.C. § 794a(a)(2) provides that "[t]he remedies, procedures, and rights set forth in title VI of the Civil Rights Act of 1964 (42 U.S.C. 2000d et seq.) (and in subsection (e)(3) of section 706 of such Act (42 U.S.C. 2000e–5), applied to claims of discrimination in compensation) shall be available to any person aggrieved by any act or failure to act by any recipient of Federal assistance or Federal provider of such assistance under section 794 of this title.

72.     Accordingly, 29 U.S.C. § 794a(a)(2) provides that anyone bringing claims of discrimination against a recipient of federal funding may avail themselves of the remedies in 42 U.S.C. § 2000e-5(e)(3), which in turn states: "*In addition to* any relief authorized by section 1981a of this title . . . an aggrieved person may obtain [other] relief . . . ." 42 U.S.C. § 2000e-5(e)(3)(B) (emphasis added). And 42 U.S.C. § 1981a(b)(3) expressly permits compensatory damages for "emotional pain" and "mental anguish."

73.     As such, "*any person* aggrieved by *any act or failure to act by any recipient of Federal Assistance . . . under section 794*" is entitled to the "*remedies*, procedures, and rights" not only in "title VI of the Civil Rights Act of 1964," but also in "subsection (e)(3) of section 706 of such Act (42 U.S.C. 2000e–5)." 29 U.S.C. § 794a(a)(2) (emphasis added).

74.     42 U.S.C. § 2000e-5(e)(3), in turn, authorizes certain relief "[i]n addition to any relief authorized by section 1981a," and 42 U.S.C. § 1981a(b)(3) expressly permits compensatory damages for "emotional pain" and "mental anguish."

75.     Defendants have failed to implement policies, procedures, and training of staff

necessary to ensure compliance with the Patient Protection and Affordable Care Act.

76.     Anderson is entitled to injunctive relief; attorney's fees, costs, and disbursements; and compensatory damages for the injuries and loss they sustained as a result of Defendants' discriminatory conduct and deliberate indifference as alleged under 42 U.S.C. § 18116(a).

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Shellonda Anderson respectfully requests that this Court:

A.     Issue an injunction forbidding Defendants from implementing or enforcing any policy, procedure, or practice that denies deaf individuals meaningful access to, and full and equal enjoyment of, Defendants' facilities, services, or programs in violation of Section 1557 of the Patient Protection and Affordable Care Act,;

B.     Issue an injunction ordering Defendants to:

   i.     offer an interpreter for the patient at no cost to the patient whenever a Mount Sinai employee encounters a patient whose primary language is something other than English;

   ii.     train all employees, staff, and other agents on a regular basis about the rights of individuals who are deaf or hard of hearing under city, state, and federal law;

   iii.     honor Plaintiff's right to understand her medical history by providing American Sign Language interpreters to explain her prior history and procedures because a recitation of her care, with the ability to ask questions, would put her in as good a position as if the contract had been performed;

   iv.     develop, implement, promulgate, and comply with a policy requiring a clear offer of language assistance services. If a patient declines language assistance services, document such refusal in a specific and uniform location in the patient's medical

records, such that it can be readily retrieved in a review of those records. Such documentation shall include, at a minimum: (1) an acknowledgement, signed by the patient, that the availability of free language assistance services was explained to the patient in the patient's primary language and that he or she knowingly declined those services; (2) the name of the interpreter used to explain, in the patient's primary language, the patient's right to free language assistance services; and (3) the patient's reason or refusing language assistance services.

C.  Order Defendants to take such affirmative steps as may be necessary to restore, as nearly as practicable, Plaintiff to the position she would have been in but for the discriminatory conduct.

D.  Award to Plaintiff:

    i.  Nominal damages;

    ii.  Compensatory damages;

    iii.  Reasonable costs and attorney's fees;

    iv.  Interest on all amounts at the highest rates and earliest dates allowed by law; and

    v.  Any and all other relief that this Court deems just and appropriate.


Dated: January 31, 2024                                    Respectfully submitted,


Andrew Rozynski
**EISENBERG & BAUM, LLP**
24 Union Square East, PH
New York, NY 10003
(212) 353-8700
arozynski@eandblaw.com
*Attorneys for Plaintiff*